UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Raphael, White and Senior Judge Petty
Argued at Richmond, Virginia


JEREMY DWAYNE ADAMS

                                               MEMORANDUM OPINION[*] BY
v.        Record No. 0875-22-2           JUDGE KIMBERLEY SLAYTON WHITE
                                                    JULY 11, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF MIDDLESEX COUNTY
Ray W. Grubbs, Judge Designate

Charles E. Haden for appellant.

Stephen J. Sovinsky, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Jeremy Dwayne Adams appeals his convictions, following a jury trial, for reckless driving, felony eluding, and felony failure to appear, in violation of Code §§ 46.2-862, 46.2-817(B), and 19.2-128. Adams asserts that the evidence is insufficient to support his convictions. For the following reasons, we disagree, and affirm the convictions.

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

On August 23, 2020, Virginia State Trooper John William Krom was monitoring northbound traffic on Route 17 with a stationary radar. At 8:11 p.m. Trooper Krom observed a blue pickup truck, driven by Adams, traveling in the left lane at 96 miles per hour in a posted 60 mile-per-hour zone. Trooper Krom activated his blue emergency lights and sirens and accelerated to 135 miles per hour to initiate a traffic stop.[1]

Despite the presence of a clear and wide shoulder, Adams continued to accelerate. Adams's progress was obstructed by another vehicle traveling ahead of him in the left-hand lane allowing Trooper Krom to come within several car lengths of Adams's truck. Adams then abruptly changed lanes in front of another vehicle traveling in the right-hand lane, causing the vehicle to apply its brakes to avoid a collision. Trooper Krom indicated that there was "very little room between [the vehicles], less than half a car length, if that, maybe a few feet." As Adams accelerated past the vehicle traveling in the left-hand lane, that car moved to allow Trooper Krom to pursue Adams.

Adams again accelerated to 112 miles per hour for another mile and a half. Suddenly, Adams turned left into a crossover and traveled at 80 miles per hour southbound on Route 17. Trooper Krom pursued. Unexpectedly, Adams slowed down and turned onto a side road and into a church parking lot, ending the pursuit. Trooper Krom, conducting a felony stop, ordered Adams out of the truck. Also on the scene was a front seat passenger in the truck, Crystal Nicole Powell.

After Trooper Krom advised Adams of his *Miranda* rights,[2] Adams volunteered that "he knew he shouldn't have run and he should have stopped." He indicated he had been arguing with Powell about a song on the radio. He stated that "he had seen the patrol car, but he had hit the gas

---

[1] Trooper Krom's vehicle was equipped with additional lights on the front doors, around the rear license plate, and at the rear of the vehicle as it was a part of a Virginia Tech study.

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

because he thought that he could make it to his grandmother's house." Adams stopped because Trooper Krom was "right on his ass."

Adams provided an address in Water View. Trooper Krom noted that to get to that area, Adams would have had to continue northbound on Route 17 rather than make a U-turn and travel southbound. Trooper Krom noted that there were no obstructions in the truck's rearview mirror or back windshield. The pursuit lasted 3.3 miles and it was still light outside during the encounter. The Commonwealth introduced an order requiring Adams to appear before the trial court on August 4, 2021, at 9:30 a.m.

Adams testified in his own defense and admitted that he had been convicted of three felonies. On the night of the incident, he went to dinner with Powell and was attempting to remember the name of a song, so he called his grandmother. While talking to his grandmother he heard a thud, after which she was not responsive. Because of her medical history, he believed she had fallen. He "hammered down" and directed Powell to call her back. Once he noticed Trooper Krom, he pulled into a church parking lot. When he pulled over, Adams stated that Trooper Krom was shaking, drew his gun, and screamed "get the fuck out of the truck." Adams got on the ground and asked Trooper Krom not to shoot him. Adams admitted that he was speeding but stated that he "had no intention of endangering anybody." He claimed that he attempted to tell Trooper Krom that he was just trying to get to his grandmother.

On cross-examination, Adams admitted that he knew the speed limit was 60 miles per hour, that he had seen Trooper Krom while northbound before he executed a U-turn, and that he accelerated to 80 miles per hour after turning. He denied that he admitted fault to Trooper Krom. Finally, Adams admitted that he failed to appear on August 4, 2021.

The Commonwealth recalled Trooper Krom who testified that Adams never mentioned that they were near Adams's grandmother's house, that she had fallen and was in distress, or that there was any emergency.

After closing arguments, the jury convicted Adams of felony eluding, reckless driving, and felony failure to appear. Adams moved to set aside "the felony" arguing that "[t]here was no evidence at all of any wanton or willful endangerment." The trial court denied the motion. The trial court sentenced Adams to 4 years and 60 days of incarceration. Adams appeals.

ANALYSIS

I.

Adams asserts that there was no evidence of wanton or willful endangerment. He admits that he was speeding, but he argues that he had a valid reason—he feared his grandmother had fallen and he was rushing to her aid. He asserts that no one was endangered by his speeding and that there is no evidence that he intended to endanger anyone.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by

- 4 -

the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"The sole responsibility to determine the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn from proven facts lies with the fact finder." *Blankenship v. Commonwealth*, 71 Va. App. 608, 619 (2020) (quoting *Ragland v. Commonwealth*, 67 Va. App. 519, 529-30 (2017)). Moreover, "[t]he conclusions of the fact finder on issues of witness credibility may be disturbed on appeal only when we find that the witness' testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Ashby v. Commonwealth*, 33 Va. App. 540, 548 (2000) (quoting *Fisher v. Commonwealth*, 228 Va. 296, 299 (1984)). This Court gives "deference to the fact finder who, having seen and heard the witnesses, assesses their credibility and weighs their testimony." *Elliott v. Commonwealth*, 277 Va. 457, 462 (2009).

> Any person who, having received a visible or audible signal from any law-enforcement officer to bring his motor vehicle to a stop, drives such motor vehicle in a willful and wanton disregard of such signal so as to interfere with or endanger the operation of the law-enforcement vehicle or endanger a person is guilty of a Class 6 felony.

Code § 46.2-817(B).

In *Bazemore v. Commonwealth*, 42 Va. App. 203 (2004), this Court noted that the Virginia Supreme Court defined willful and wanton conduct in the civil context as terms that

> are used to signify a higher degree of neglect than gross negligence. In order that one may be held guilty of willful or wanton conduct, it must be shown that he was conscious of his conduct, and conscious, from his knowledge of existing conditions, that injury would likely or probably result from his conduct, and that with reckless indifference to consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injurious result.

*Id.* at 222 (quoting *Thomas v. Snow*, 162 Va. 654, 660 (1934)). Consequently, "[t]his definition requires a showing of recklessness plus additional culpability." *Id.*

> One who is acting recklessly is fully aware of the unreasonable risk he is creating, but may be trying and hoping to avoid any harm. One acting wantonly may be creating no greater risk of harm, but he is not trying to avoid it and is indifferent to whether harm results or not. Wanton conduct has properly been characterized as "vicious" and rates extreme in the degree of culpability. The two are not mutually exclusive. Wanton conduct is reckless plus, so to speak.

*Black's Law Dictionary* 1576 (7th ed. 1999) (quoting Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 879-80 (3d ed. 1982)).

Here, the evidence shows that Adams traveled at 96 miles per hour in a 60 mile-per-hour zone. Trooper Krom activated his emergency lights and sirens and accelerated to 135 miles per hour to conduct a traffic stop. When Trooper Krom caught up to Adams a mile later, Adams abruptly changed lanes in front of a vehicle traveling in the right lane, forcing the car to brake to avoid a collision. Adams then accelerated past the left lane vehicle and reached speeds of 112 miles per hour with Trooper Krom in pursuit.

Almost two miles later, Adams executed a U-turn, drove southbound on Route 17, and accelerated to 80 miles per hour; Trooper Krom followed. Eventually, Adams slowed down and stopped in a church parking lot where he complied with Trooper Krom's orders to exit the truck. The evidence in the record supports the jury's finding that Adams operated the truck in a wanton and willful disregard of Trooper Krom's signal and that he endangered Trooper Krom, his passenger Powell, and other drivers while far exceeding the posted speed limit.

Furthermore, the jury was aware of Adams's theory of innocence. At trial Adams admitted that he was speeding but stated that he was attempting to reach his grandmother who he believed had fallen while talking with him on the phone. He testified that it was not until after he executed

the U-turn and continued south on Route 17 that he became aware that Trooper Krom was pursuing him. As soon as he saw Trooper Krom, he pulled over.

By finding Adams guilty, the jury presumably "found by a process of elimination that the evidence does not contain a reasonable theory of innocence." *Edwards v. Commonwealth*, 68 Va. App. 284, 301 (2017) (quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 9 (2004)). "While a factfinder may not arbitrarily disregard a reasonable doubt, whether 'the hypothesis of innocence is reasonable is itself a "question of fact," subject to deferential appellate review.'" *Burton v. Commonwealth*, 58 Va. App. 274, 285-86 (2011) (quoting *Clanton v. Commonwealth*, 53 Va. App. 561, 572 (2009) (en banc)). Because the jury heard Adams's hypothesis and rationally rejected it, we will not disturb that finding on appeal.

II.

Adams appears to argue that the Commonwealth failed to prove that he "committed [the offenses charged] or intended to commit [the offenses charged]." He contends that there is no evidence he operated the truck in a criminally negligent manner, that he endangered life or could not navigate at the speed of travel. Finally, he asserts that his felony failure to appear should have been at most a misdemeanor.

Rule 5A:18 requires that an "objection [be] stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Pursuant to the rule, "a specific argument must be made to the trial court at the appropriate time, or the allegation of error will not be considered on appeal." *Edwards v. Commonwealth*, 41 Va. App. 752, 760 (2003) (en banc). "[M]aking one specific argument on an issue does not preserve a separate legal point on the same issue for [appellate] review." *Hicks v. Commonwealth*, 71 Va. App. 255, 266 (2019) (second alteration in original) (quoting *Johnson v. Commonwealth*, 58 Va. App. 625, 637 (2011)). *See Ray v. Commonwealth*, 74 Va. App. 291, 306-07 (2022).

In a jury trial, the defendant preserves his objections to the sufficiency of the evidence in a motion to strike at the conclusion of the Commonwealth's case if he elects to not introduce evidence of his own, or in a motion to strike at the conclusion of all the evidence or a motion to set aside the verdict if he does elect to introduce evidence of his own. *See Murillo–Rodriguez v. Commonwealth*, 279 Va. 64, 84 (2010).

At trial, Adams's counsel did not challenge the sufficiency of the evidence to prove that he drove recklessly or that he should not be convicted of felony failure to appear. Instead, trial counsel argued only after the jury had returned the verdict that the evidence was insufficient to convict Adams of felony eluding by simply stating, "Motion to set aside the felony. There was no evidence at all of any wanton or willful endangerment presented to the [c]ourt." As a result, under Rule 5A:18, Adams failed to preserve for appeal any challenge to the sufficiency of the evidence establishing either reckless driving or felony failure to appear. *See Murillo–Rodriguez*, 279 Va. at 84; *Copeland v. Commonwealth*, 42 Va. App. 424, 441 (2004). Indeed, Adams appears to acknowledge that he failed to raise an objection below but contends that we must address this issue because it falls within the "ends of justice" exception to Rule 5A:18.

The ends-of-justice exception "is narrow and is to be used sparingly." *Holt v. Commonwealth*, 66 Va. App. 199, 209 (2016) (en banc) (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 220 (1997)). When analyzing "whether to apply" the ends-of-justice exception, an appellate court "considers two questions": "'(1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends of justice provision would result in a grave injustice.'" *Commonwealth v. Bass*, 292 Va. 19, 27 (2016) (quoting *Gheorghiu v. Commonwealth*, 280 Va. 678, 689 (2010)). To meet the requirements of the exception, "[i]t is never enough for the defendant to merely assert a winning argument on the merits—for if that were enough[,] procedural default 'would never apply, except when it does not matter.'" *Winslow v. Commonwealth*, 62 Va. App.

539, 546 (2013) (quoting *Alford v. Commonwealth*, 56 Va. App. 706, 710 (2010)). Instead, an appellant "must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." *Redman*, 25 Va. App. at 221; *see Ali v. Commonwealth*, 280 Va. 665, 671 (2010). The error at issue must be "clear, substantial and material." *Brown v. Commonwealth*, 279 Va. 210, 219 (2010) (quoting *West v. Commonwealth*, 43 Va. App. 327, 338 (2004)).

In practical terms, these principles mean that for the ends-of-justice exception to apply to a sufficiency challenge, the appellant must provide a record "affirmatively prov[ing]" that he was "convicted for conduct that was not a criminal offense" or "that an element of the offense did not occur." *Redman*, 25 Va. App. at 222. A failure of proof alone is insufficient to successfully invoke the exception. *Brittle v. Commonwealth*, 54 Va. App. 505, 514-17 (2009).

Reckless Driving

"A person is guilty of reckless driving who drives a motor vehicle on the highways in the Commonwealth (i) at a speed of 20 miles per hour or more in excess of the applicable maximum speed limit or (ii) in excess of 85 miles per hour regardless of the applicable maximum speed limit." Code § 46.2-862.

In the present case, the record simply does not contain affirmative evidence establishing Adams's innocence or the lack of a criminal offense. Trooper Krom captured Adams on radar traveling at 96 miles per hour in a 60 mile-per-hour zone. When Trooper Krom attempted to initiate a traffic stop, Adams accelerated, reaching speeds of 112 miles per hour. At trial, Adams admitted that he was speeding. The record does not affirmatively prove that Adams did not commit this offense. Therefore, as to this crime, the facts do not fall within the narrow circumstances in which the ends-of-justice exception applies.

Felony Failure to Appear

Adams argues that the evidence only proved, at most, that he committed misdemeanor failure to appear rather than felony failure to appear. "Any person . . . charged with a felony offense . . . who willfully fails to appear before any court as required shall be guilty of a Class 6 felony." Code § 19.2-128(B). "Any person (i) charged with a misdemeanor offense or (ii) convicted of a misdemeanor offense and execution of sentence is suspended pursuant to § 19.2-319 who willfully fails to appear before any court as required shall be guilty of a Class 1 misdemeanor." Code § 19.2-128(C). The record establishes that Adams was charged with both a felony and misdemeanor and that he was ordered to appear on August 4, 2021. Adams admitted at trial that he failed to appear on August 4. Thus, because Adams failed to appear when charged with a felony, the record does not affirmatively prove that Adams did not commit this offense. Therefore, as to this crime, the facts do not fall within the narrow circumstances in which the ends-of-justice exception applies.

## CONCLUSION

In sum, the record supports the jury's credibility determination, and we will not disturb that finding on appeal. The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that Adams was guilty of felony eluding. Further, the record does not provide a basis for applying the ends-of-justice exception to permit this Court to consider Adams's second assignment of error sufficiency arguments. Therefore, consideration of that assignment of error on its merits is procedurally barred by Rule 5A:18. For these reasons, we affirm the convictions.

*Affirmed*.