UPON A REHEARING EN BANC
HUMPHREYS, Judge.
This matter comes before the Court on a rehearing en banc from an unpublished panel decision rendered May 13, 2003. See Bazemore v. Commonwealth, 03 Vap UNP 0103021, 2003 WL 21057291 (2003). In that decision, a divided panel of this Court affirmed Nicko Bazemore’s conviction for grand larceny, but reversed his convictions for feloniously eluding police and second degree murder. By order dated June 12, 2003, we granted the Commonwealth’s petition for a rehearing en banc, stayed the mandate of that decision, and reinstated the appeal. Upon rehearing this case en banc, we affirm each of Bazemore’s convictions.
*208 I. Background
“When an appellant challenges the sufficiency of the evidence to sustain his conviction, we review the evidence in the light most favorable to the Commonwealth and grant to it ‘all reasonable inferences fairly deducible therefrom.’ ” Kelley v. Commonwealth, 17 Va.App. 540, 548, 489 S.E.2d 616, 621 (1994) (citation omitted). So viewed, the evidence presented during Bazemore’s trial proved that on the morning of August 4, 2000, Officer M.C. Marshall noticed a broken rear window on a green minivan in the City of Suffolk and received information that the license plates on the minivan were registered to another vehicle. When Officer Marshall activated the siren and lights on his police car, the driver of the green minivan continued to drive.
During Officer Marshall’s pursuit of the green minivan, which covered a little more than a mile in relatively heavy traffic, the driver of the minivan failed to heed two stop signs, accelerated to 50 miles per hour, and later decreased his speed “to ... 10 miles an hour.” The green minivan made a series of turns, failed to heed another stop sign, and struck another minivan after entering the intersection. Officer Marshall could not estimate the vehicle’s speed; however, he testified that his own speed was “approximately 15 to 20 miles an hour” when the green minivan entered the intersection. A witness described the green minivan as “shooting across the intersection.”
After the green minivan hit the other minivan, yet another vehicle hit the other minivan. A passenger in the minivan that was hit sustained a fractured cervical spine and died. After the collision, the green minivan spun off the road and crashed into a nearby house.
As Officer Marshall approached the green minivan, he observed Greg Shorter leave the van through the front passenger door. Officer Marshall also observed Bazemore moving from the driver’s seat and attempting to exit through the front passenger door. Officer Marshall then arrested Shorter and Bazemore. Denise Byron, another passenger in the green *209 minivan, was found lying on the ground, after having been thrown from the van when it hit the house.
When the rescue squad arrived, Bazemore complained of pain and told officers responding to the scene that he was driving the green minivan when it crashed. Officers observed that Bazemore was wearing one shoe. Inside the green minivan, officers found Bazemore’s other shoe under the brake pedal. They also found a 9-mm handgun, a screwdriver, and a Florida license plate. The minivan’s ignition had been damaged, and a rag was covering the steering column. The evidence proved that the green minivan had been stolen two days earlier in the City of Norfolk and that broken glass was found on the pavement after it had been stolen.
Several hours after police arrested Bazemore, he waived his Miranda rights. Bazemore initially told the police that a friend, whom he only knew as “Malik,” and Shorter offered him a ride at 9:00 p.m. on the night before the accident. Bazemore said that he noticed the screwdriver on the floor and the broken window and that Malik told him he had gotten the van from Norfolk. Bazemore also said he learned within two hours that the van had been stolen. Later, Byron joined them and sat in the rear area of the van.
Bazemore told police he began driving the vehicle at 3:00 a.m. He also said that after the officer attempted to stop the vehicle, he believed the vehicle might be stolen. When asked “Why didn’t you stop the vehicle?,” he responded “I was scared.” As the interview progressed, Bazemore said that Malik did not exist and that when he entered the minivan, Shorter was the driver and sole occupant. Bazemore admitted he was driving the van when the accident occurred and could not recall his speed because “it happened so quick.”
On October 25, 2000, the grand jury for the City of Suffolk indicted Bazemore on charges of grand larceny, “in violation of [Code] § 18.2-95,” felony eluding police, in violation of Code §§ 46.2-817 and 18.2-10, and second degree murder. The indictment for second degree murder stated that Bazemore “unlawfully and feloniously while in the prosecution of a *210 felonious act, accidentally, contrary to the intention of the parties, did Mil and murder ... in violation of [Code] §§ 18.2-33,18.2-32, and 18.2-26.”
During his trial, after the trial judge had denied Bazemore’s motion to strike the evidence, Bazemore testified that Shorter, who is also called “Malik,” was driving the green minivan when he entered it. They spent the hours before the incident driving to various places. Bazemore testified he was driving when Byron joined them at 5:30 or 6:00 in the morning, but he denied seeing the broken steering column. Although he knew Shorter did not own the minivan and did not have money to buy a vehicle, he did not ask Shorter where he obtained it or who owned it.
Bazemore also testified that, after the police signaled him to stop and began to pursue him, he and Shorter switched places in the moving vehicle. He said that Shorter was driving when the vehicle entered the intersection and that he did not remember telling police he was driving when the collision occurred. Despite his previous statement to police that he had not seen a gun in the van, Bazemore testified that Shorter displayed the gun, said he was not going back to prison, and ignored Bazemore’s and Byron’s requests to stop. Bazemore also testified that after the accident, Shorter crawled across him from the driver seat to get out of the van. He testified that he lied to the police in the interview to protect Shorter because he “was afraid of everything that was going on around him” and afraid of Shorter.
The jury convicted Bazemore of “grand larceny by receiving stolen property,” of the “felony ... of disregarding the signal of a law enforcement officer,” and of “felony homicide.” The final conviction order denotes the convictions as “Grand Larceny ([Code] § 18.2-95),” “Eluding Poliee-Endangerment (§ 46.2-81[7](B) (Felony),” and “Second Degree Murder (§ 18.2-32) (Felony).”
II. Analysis
On appeal, Bazemore contends (1) the evidence was insufficient to support the convictions, (2) the trial judge erred by *211 refusing to give the jury an instruction defining the word “wanton,” and (3) the trial judge erred by failing to properly instruct the jury on the elements of the offense of feloniously eluding the police and, thus, permitted the jury to improperly convict him of feloniously eluding the police and felony homicide. For the reasons that follow, we affirm Bazemore’s convictions.
A.
Bazemore first contends the evidence was insufficient to support his conviction for grand larceny by receiving stolen property. Specifically, he argues the evidence was insufficient to prove he knew the vehicle was stolen, intended to permanently deprive the owner of the vehicle, and had dishonest intent.
We first note, in regard to this argument, that Bazemore contends the evidence was insufficient to convict him of violating Code § 18.2-108. The final conviction order recites, however, that the conviction was for grand larceny in violation of Code § 18.2-95, which was the charge specified in the indictment. Although neither Bazemore nor the Commonwealth addressed this discrepancy, we address it for purposes of clarity.
The record reflects that the trial judge’s instructions permitted the jury to convict Bazemore of “grand larceny,” which was the offense charged in the indictment, or to convict him of other lesser offenses, including “grand larceny by receiving stolen property.” The verdict form establishes that the jury convicted Bazemore of “grand larceny by receiving stolen property,” which is prohibited by Code § 18.2-108. Following the guilt phase of the trial, the jury fixed Bazemore’s punishment at one year in prison for “grand larceny by receiving stolen property.” Consistent with the jury’s findings, the trial judge entered an order reflecting that the jury convicted Bazemore and fixed his sentence for “grand larceny by receiving stolen property.” The final conviction order, however, contains no reference to Code § 18.2-108 and recites only that *212 Bazemore was convicted of “grand larceny ([Code] § 18.2-95).”
The Supreme Court has held that “[r]eceiving stolen goods, knowing the same to be stolen, may be charged as larceny.” Clark v. Commonwealth, 135 Va. 490, 498, 115 S.E. 704, 706 (1923), overruled on other grounds by Chittum v. Commonwealth, 211 Va. 12, 174 S.E.2d 779 (1970). See also Cobbler v. Commonwealth, 212 Va. 520, 524, 184 S.E.2d 781, 783 (1971) (holding that “[l]arceny by receiving stolen goods is a lesser offense which is included in the major one of larceny”). In view of these decisions, the jury’s verdict forms, and the trial judge’s order entered upon the jury’s verdict, we hold that the trial judge’s failure to include a reference to Code § 18.2-108 on the final conviction order was a mere clerical error. We further remand this matter to the trial court for the limited purpose of correcting that error.
Turning to the merits of Bazemore’s argument, we recognize that Code § 18.2-108 provides that “[i]f any person buy or receive from another person, or aid in concealing, any stolen goods or other thing, knowing the same to have been stolen, he shall be deemed guilty of larceny thereof, and may be proceeded against, although the principal offender be not convicted.” We have described the elements of the offense as follows:
“To convict a defendant under Code § 18.2-108, the Commonwealth must prove that property ‘was (1) previously stolen by another, and (2) received by defendant, (3) with knowledge of the theft, and (4) a dishonest intent.’ Guilty knowledge ‘is sufficiently shown if the circumstances proven are such as must have made or caused the recipient of stolen goods to believe they were stolen.’ ” Shaver v. Commonwealth, 30 Va.App. 789, 800-01, 520 S.E.2d 393, 399 (1999). “Guilty knowledge ... [a]bsent proof of an admission against interest, ... necessarily must be shown by circumstantial evidence.” Lewis v. Commonwealth, 225 Va. 497, 503, 303 S.E.2d 890, 893 (1983).
*213 Snow v. Commonwealth, 33 Va.App. 766, 775, 537 S.E.2d 6, 11 (2000).
The evidence in the case at bar, when viewed in the light most favorable to the Commonwealth, proved that Bazemore confessed to police that shortly after he entered the green minivan, he learned it had been stolen. He also saw the minivan’s broken window and the screwdriver on the floor. Thus, by Bazemore’s own admission, he knew he was driving a stolen vehicle before he failed to heed the officer’s signal. The evidence also proved Bazemore admitted to an inmate in jail that he knew the vehicle was stolen. Moreover, apart from his own confession and the testimony of an inmate, the evidence proved Bazemore was driving the vehicle in daylight and had the opportunity to see the “popped” ignition, the broken steering column, and a rag covering the steering column.
The jury was not required to accept Bazemore’s trial testimony. Marable v. Commonwealth, 27 Va.App. 505, 509-10, 500 S.E.2d 233, 235 (1998). It was free to believe or disbelieve, in part or in whole, the testimony of any witness. Rollston v. Commonwealth, 11 Va.App. 535, 547, 399 S.E.2d 823, 830 (1991). Although Bazemore’s testimony differed from his confession, “the jury was ‘not obliged to accept’ what it obviously found was an unreasonable explanation,” Roberts v. Commonwealth, 230 Va. 264, 272, 337 S.E.2d 255, 260 (1985), and was free to believe his confessed participation. We hold the evidence was sufficient for the jury to find beyond a reasonable doubt that Bazemore knew the vehicle was stolen when he drove it.
Bazemore also contends the evidence was insufficient to prove he intended to permanently deprive the owner of the minivan. However, Bazemore’s reliance on Moehring v. Commonwealth, 223 Va. 564, 290 S.E.2d 891 (1982), to support his defense that he had no intent to permanently deprive is misplaced. The Supreme Court noted the following in reversing Moehring’s conviction:
*214 There is no evidence in the record which demonstrates that Moehring exercised any degree of dominion or control over the stolen truck, or from which the court could have inferred that defendant possessed the truck jointly with Faison .... The most that can be said with reasonable certainty is that this defendant-hitchhiker accepted a ride from the first person who stopped and that he knew that person was driving a stolen vehicle.
Id. at 568, 290 S.E.2d at 893. Pertinent to the evidence in this case, the Supreme Court of Virginia in Moehring restated the well-settled rule that “[bjecause larceny is a continuing offense, anyone who knows that personal property is stolen and assists in its transportation or disposition is guilty of larceny.” Id. The evidence here proved beyond a reasonable doubt that Bazemore knew the vehicle was stolen and drove it with that knowledge.
Bazemore further argues that the evidence was insufficient to prove he had dishonest intent. We have consistently held, however, that issues that were not properly preserved at trial cannot be raised on appeal. Andrews v. Commonwealth, 37 Va.App. 479, 493, 559 S.E.2d 401, 408 (2002). Bazemore never raised the argument of dishonest intent before the trial court. Because, on this record, we find no reason to consider this argument pursuant to the “good cause” or “ends of justice” exceptions to Rule 5A:18, we do not review this issue, raised for the first time on appeal. See Rule 5A:18.
B.
Bazemore next contends on appeal that the trial judge erred in failing to instruct the jury on the definition of “wanton.” Bazemore argues that because of this error his convictions for felony eluding police and felony homicide must be reversed.
To prove a violation of Code § 46.2-817, the Commonwealth had to prove Bazemore drove the “motor vehicle in a willful and wanton disregard” of the officer’s signal. Nevertheless, Bazemore did not ask the judge to instruct the jury *215 concerning the definition of “wanton.” Therefore, we will not review the issue for the first time on appeal. See Rule 5A:18. Furthermore, we find that this record provides no basis to consider this claim under the exceptions to Rule 5A:18.
C.
In his final arguments on appeal, Bazemore contends the evidence was insufficient to prove he wantonly disregarded the officer’s signal to stop. He also contends the trial judge incorrectly instructed the jury concerning the elements of Code § 46.2-817 by placing the elements of “willfull” and “wanton” in the disjunctive, rather than in the conjunctive. Consequently, Bazemore argues his felony eluding conviction should be reversed and, because his felony homicide conviction was contingent upon the felony eluding conviction, that conviction must also be reversed.
At the close of the Commonwealth’s evidence, Bazemore’s trial attorney made a motion to strike. He conceded Bazemore operated the minivan. He argued, however, that because Bazemore did not know the minivan was stolen, the evidence failed to prove grand larceny. Thus, he argued that grand larceny, which he asserted should have been the predicate offense for felony homicide, was not proved. He then argued as follows:
I would submit ... that the eluding is a separate and distinct crime, that the essence of which is [failure] to heed the police signal to stop under circumstances that create danger to the motoring or pedestrian traffic.... I would submit, Judge, that that is not a sufficient predicate for felony murder to apply.
At the conclusion of the evidence, Bazemore’s trial attorney also moved to strike the evidence concerning the eluding charge, asserting “there [wasn’t] any real clear, intelligent evidence that [Bazemore] was actually operating the vehicle for any length of time that the vehicle failed to stop when the blue lights were on and the car was being driven in such fashion as to endanger.” Bazemore’s attorney argued, that *216 because credible evidence proved Shorter had switched places with Bazemore, “[tjhere’s no evidence to clearly demonstrate that anyone was endangered at any time for a felony eluding when [Bazemore] was operating the vehicle. And the evidence before you is that when he wanted to stop, he couldn’t stop because [Shorter] had brandished a weapon ... and said, ‘Drive on.’ ” Summarizing, Bazemore’s trial attorney argued as follows:
[T]hey have to prove for the reckless endangerment element that the defendant was driving at the time to create a danger to the motoring or pedestrian public. They can’t do that. We would have to guess, the Court would have to guess at [the] point that endangerment occurred. So I would submit, Your Honor, that the charge of felony eluding, likewise, has to fall because there is insufficient evidence to support the conclusion that at the relevant time that the defendant was actually driving a car or this van to endanger the motoring public.
As to the felony-homicide charge, he argued as follows:
We would also ... move to strike the Commonwealth’s evidence as to second degree murder. It’s clear that this was an accident, that whoever was driving that it was not the intended purpose to do that, and ... the evidence before the Court is that the defendant was not the operator of the vehicle at the time of the collision.
These arguments, which the trial judge rejected, also formed the gist of Bazemore’s counsel’s closing argument to the jury. Urging the jury to analyze “the elements of the offenses,” he discussed in detail the elements of the larceny offense. As to “the eluding,” he posed the question, “where is the evidence that Nicko Bazemore was operating ... the [vehicle] at any time that created a danger to the public?” Thus, he argued:
So, if, indeed, you conclude that [Bazemore] was not the driver of the [vehicle] at the time of the collision, he could not be convicted of felony murder. If you believe that he was not driving at any time when the vehicle presented a *217 danger to the motoring public, he could not be convicted of eluding a felony.
At all stages of the trial, Bazemore contended he was not driving when the vehicle entered the intersection in disregard of the stop sign and collided with the van. At no point did he object that the evidence was insufficient to prove the element of “wanton.” The failure to raise these issues at trial bars our consideration of them on appeal. Rule 5A:18. See Floyd v. Commonwealth, 219 Va. 575, 583-85, 249 S.E.2d 171, 176 (1978) (holding that appellate review of the issue of insufficiency to prove a specific element is barred when that issue was not raised at trial). Moreover, in view of the arguments Bazemore actually advanced at trial and the evidence produced, we conclude that no basis exists to invoke the exceptions to Rule 5A:18.
We find that we are likewise precluded from considering Bazemore’s final contention that the trial judge erred in instructing the jury on the elements of the offense of eluding. The instruction given, read as follows:
The Court instructs the jury that the defendant is charged with a felony crime of disregarding a signal of a law enforcement officer to stop. The Commonwealth must prove beyond a reasonable doubt each of the following elements of a crime. Number 1, that the defendant was driving a motor vehicle; and Number 2, that he received a visible and/or audible signal from a law enforcement officer to bring his motor vehicle to a stop; and Number 3, that he willfully or wantonly disregarded such signal so as to endanger any person....
The record reflects that Bazemore did not object to the jury instruction in any manner. Indeed, Bazemore does not dispute his failure to raise an objection below, but contends that we must address this issue because it falls within the “ends of justice” exception to Rule 5A:18.
We begin our analysis by recognizing that Code § 46.2-817 provides that
*218 [a]ny person who, having received a visible or audible signal from any law-enforcement officer to bring his motor vehicle to a stop, drives such motor vehicle in a willful and wanton disregard of such signal so as to interfere with or endanger the operation of the law-enforcement vehicle or endanger a person is guilty of a Class 6 felony.
(Emphasis added). The trial judge instructed the jury that the Commonwealth was required to “prove beyond a reasonable doubt ... that [Bazemore] willfully or wantonly disregarded such signal so as to endanger any person.” (Emphasis added).[1] The parties do not dispute the fact that the instruction, as given, was an incorrect statement of law.
Nevertheless,
[u]nder Rule 5A:18 we do not notice the trial errors for which no timely objection was made except in extraordinary situations when necessary to enable us to attain the ends of justice. The laudatory purpose behind Rule 5A:18, and its equivalent Supreme Court Rule 5:25, frequently referred to as the contemporaneous objection rules, is to require that objections be promptly brought to the attention of the trial court with sufficient specificity that the alleged error can be dealt with and timely addressed and corrected when necessary. The rules promote orderly and efficient justice and are to be strictly enforced except where the error has resulted in manifest injustice. Errors can usually be corrected in the trial court, particularly in a bench trial, without the necessity of appeal. Because our function is to review the rulings of the trial court, rather than superintend the proceedings, we will notice error for which there has been no timely objection only when necessary to satisfy the ends of justice.
Brown v. Commonwealth, 8 Va.App. 126, 131, 380 S.E.2d 8,10 (1989) (citation omitted).
*219 “ ‘The ends of justice exception is narrow and is to be used sparingly.’ ” Redman v. Commonwealth, 25 Va.App. 215, 220, 487 S.E.2d 269, 272 (1997) (quoting Brown, 8 Va.App. at 132, 380 S.E.2d at 10)). Additionally, the record must “affirmatively show[] that a miscarriage of justice has occurred not ... that a miscarriage might have occurred.” Mounce v. Commonwealth, 4 Va.App. 433, 436, 357 S.E.2d 742, 744 (1987) (emphasis in original). This requires a defendant “to affirmatively show [that] ... that the error [was] clear, substantial and material.” Brown, 8 Va.App. at 132, 380 S.E.2d at 11 (alterations in original).
The Supreme Court of Virginia has held that the “ends of justice” exception applies to permit review when a “granted instruction omitted some essential elements of the offense” and “no evidence was produced relating to those elements.” Jimenez v. Commonwealth, 241 Va. 244, 251, 402 S.E.2d 678, 681-82 (1991). In Campbell v. Commonwealth, 14 Va.App. 988, 994, 421 S.E.2d 652, 656 (1992), this Court similarly held that the exception applies to permit our review of an instruction that “allows a jury to convict a defendant without proof of an essential and necessary element of the charged offense.”
However, neither the Supreme Court of Virginia, nor this Court, has held that we must always apply the ends of justice exception in cases involving faulty jury instructions to which no objection was noted below — even where such faulty instructions improperly stated the elements of an offense. See Phoung v. Commonwealth, 15 Va.App. 457, 464-65, 424 S.E.2d 712, 716 (1992) (refusing to consider, for the first time on appeal, defendant’s contention that the trial court improperly instructed the jury on the elements of a burglary charge). Indeed, to do so would require us to raise such failures on the part of counsel to the effective level of a jurisdictional component. See Nelson v. Warden, 262 Va. 276, 281, 552 S.E.2d 73, 75 (2001) (noting that subject matter jurisdiction is granted by constitution or statute and cannot be waived, so that any judgment rendered without it is void ab initio, and that lack of subject matter jurisdiction may be raised at any time, in any *220 manner, before any court, or by the court itself (citations omitted)). We decline to take such a leap here.
Moreover, the “broad application of the ends of justice exception” suggested by Bazemore,
would undermine the trial court’s ability to correct errors in the trial court and thereby frustrate the ends of justice, not prevent a miscarriage of justice. [S]uch an expansion of the exception would also encourage trial counsel to stand mute ... thereby knowingly inviting the trial judge to commit error without having a sufficient opportunity to rule upon the issue.
Redman, 25 Va.App. at 221, 487 S.E.2d at 273.
In this context, the Supreme Court of Virginia has recognized that “[i]t is axiomatic that ‘[i]t belongs to the [trial] court to instruct the jury as to the law, whenever they require instruction, or either of the parties request it to be given.’ ” Fishback v. Commonwealth, 260 Va. 104, 117, 532 S.E.2d 629, 635 (2000) (quoting Thornton v. Commonwealth, 65 Va. (24 Gratt.) 657, 662 (1874)). The Court has stated that courts of this Commonwealth
“adhere to the rule that the trial court is not required to amend or correct an erroneous instruction, but the rule is subject to the limitation that when the principle of law is materially vital to a defendant in a criminal case, it is reversible error for the trial court to refuse a defective instruction instead of correcting it and giving it in the proper form.”
[Fishback, 260 Va. at 117, 532 S.E.2d at 635] (quoting Whaley v. Commonwealth, 214 Va. 353, 355-56, 200 S.E.2d 556, 558 (1973)).
In contrast, a circuit court ordinarily does not have an affirmative duty to give a jury instruction on a particular legal principle when a criminal defendant fails to request that the jury be instructed on that principle. We have regularly applied this rule in criminal cases.
Commonwealth v. Jerman, 263 Va. 88, 93, 556 S.E.2d 754, 757 (2002).
*221 In view of these principles, it is clear that, when properly-understood, the Supreme Court of Virginia’s decision in Jimenez, as well as our decision in Campbell, demonstrate that this case does not represent the “extraordinary” circumstance under which we have found it necessary to overlook a defendant’s failure to object to a defective jury instruction. See Phoung, 15 Va.App. at 464-65, 424 S.E.2d at 716-17.
In Jimenez, defense counsel failed to object to a jury instruction that omitted one of the elements of an offense. As a result, the instruction did not state any offense at all. Moreover, no evidence was produced at trial relating to the missing element. Finding that Jimenez was convicted of “a non-offense” and that no evidence was produced regarding the missing element, the Virginia Supreme Court held that the error was not waived by Jimenez’s failure to raise it below. 241 Va. at 251, 402 S.E.2d at 681.
Id. at 465, 424 S.E.2d at 716. Specifically, the Court in Jimenez held,
[w]e also reject the Attorney General’s contention that Jimenez waived his right to raise this matter on appeal because he failed to preserve the error at trial. The granted instruction omitted some essential elements of the offense. Likewise, no evidence was produced relating to those elements. Jimenez, therefore, was convicted of a non-offense.
Jimenez, 241 Va. at 251, 402 S.E.2d at 681-82 (emphases added).
Campbell involved a trial for forgery of a public document. 14 Va.App. at 990, 421 S.E.2d at 653. Although the issue of intent was adamantly contested by the defendant, id. at 1005-06, 421 S.E.2d at 662 (Moon, J., dissenting), the jury instruction “essentially eliminated intent to defraud as an element of the offense.” Phoung, 15 Va.App. at 465, 424 S.E.2d at 717. “We held that a manifest injustice had occurred because the ‘instructions given by the trial court relieved the Commonwealth of its burden to. prove criminal intent,’ and permitted the jury to convict Campbell ‘for otherwise innocent behav *222 ior.’” Id. (quoting Campbell, 14 Va.App. at 992, 995, 421 S.E.2d at 655-56).
Here, no such obvious miscarriage of justice occurred. Unlike the factual scenario in Jimenez, the evidence that Bazemore “willfully and wantonly” disregarded Officer Marshall’s signal, so as to “endanger any person” was overwhelming. In the civil context, the Supreme Court long ago defined willful and wanton conduct as follows:
[W]illfulness and wantonness convey the idea of purpose or design, actual or constructive.... [T]hey are used to signify a higher degree of neglect than gross negligence. “In order that one may be held guilty of willful or wanton conduct, it must be shown that he was conscious of his conduct, and conscious, from his knowledge of existing conditions, that injury would likely or probably result from his conduct, and that with reckless indifference to consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injurious result.”
Thomas v. Snow, 162 Va. 654, 660, 174 S.E. 837, 839 (1934) (citation omitted). See also Infant C. v. Boy Scouts of America Inc., 239 Va. 572, 581, 391 S.E.2d 322, 327 (1990). This definition requires a showing of recklessness plus additional culpability.
“Wanton differs from reckless both as to the actual state of mind and as to the degree of culpability. One who is acting recklessly is fully aware of the unreasonable risk he is creating, but may be trying and hoping to avoid any harm. One acting wantonly may be creating no greater risk of harm, but he is not trying to avoid it and is indifferent to whether harm results or not. Wanton conduct has properly been characterized as ‘vicious’ and rates extreme in the degree of culpability. The two are not mutually exclusive. Wanton conduct is reckless plus, so to speak.”
Black’s Law Dictionary 1576 (7th ed.1999) (quoting Rollin M. Perkins & Ronald N. Boyce, Criminal Law 879-80 (3d ed.1982)).
*223 We have held that a person violated Code § 46.2-817(B) when he ignored a signal to stop, operated a vehicle at a high speed in violation of posted limits, passed three cars, crossed a double solid line, “disregarded a red traffic signal at an intersection with a four-lane highway,” and then crashed into a tree after losing control of the vehicle. Tucker v. Commonwealth, 38 Va.App. 343, 347, 564 S.E.2d 144, 146-47 (2002). On the other hand, the Supreme Court has noted “that the intentional violation of a traffic law, without more, will not support a finding of willful and wanton negligence.” Alfonso v. Robinson, 257 Va. 540, 545, 514 S.E.2d 615, 618 (1999).
The evidence in the present case proved much more than that Bazemore intentionally violated a traffic law. Bazemore admittedly disregarded the officer’s signal to stop in an effort to elude police. Furthermore, it is significant to note that because the jury found Bazemore guilty of felony homicide, it is clear the jury found he was driving the minivan at the time of the fatal collision. Thus, the evidence established that in his effort to elude police, Bazemore continued to drive at speeds of up to 50 miles per hour in “relatively heavy” traffic, he failed to heed three stop signs, and he drove through a busy intersection without yielding. Bazemore’s failure to yield in that intersection, which was located in a “mostly residential and small businesses area,” caused the fatal collision. Accordingly, an examination of the record demonstrates that, whether Bazemore acted because he was “scared” or otherwise, it would have been difficult for a rational trier of fact to reach any conclusion other than that Bazemore drove the minivan in a manner so as to willfully and wantonly disregard the police officer’s signal and, therefore, place others in danger.
Moreover, unlike the situation in Campbell, Bazemore never contested the elements of “willfulness” or “wantoness.” In fact, Bazemore’s only trial strategy was to claim that he was not driving the green minivan when the fatal collision occurred and/or when the “vehicle presented a danger to the motoring public.” Bazemore never contested the fact that the minivan was driven in a willful and wanton manner, so as to elude police and place others in danger.
*224 Further, the erroneous jury instruction, as given, did not allow the jury to convict Bazemore of “otherwise innocent behavior.” See Campbell, 14 Va.App. at 995, 421 S.E.2d at 656. Indeed, Code § 46.2-852 states that “[(Irrespective of the maximum speeds permitted by law, any person who drives a vehicle on any highway recklessly or at a speed or in a manner so as to endanger the life, limb, or property of any person shall be guilty of reckless driving.” (Emphasis added). Whether the jury found, under the instruction as given, that by his driving the vehicle Bazemore willfully or wantonly disregarded Officer Marshall’s signal, “so as to endanger any person,” either classification would give rise to a finding that Bazemore committed conduct that was not “otherwise innocent behavior,” but was a criminal offense. See Campbell, 14 Va.App. at 995, 421 S.E.2d at 656.
Accordingly, finding no miscarriage of justice on this record, we decline Bazemore’s invitation to consider his argument pursuant to the “ends of justice” exception to Rule 5A:18.
D.
For the above-stated reasons, we find no merit in Bazemore’s arguments on appeal and we, therefore, affirm his convictions for grand larceny, feloniously eluding police and second degree murder. However, we remand this matter to the circuit court, solely for purposes of correcting the final conviction order to reflect that Bazemore’s conviction for grand larceny was pursuant to Code § 18.2-108.

Affirmed and remanded.

. The General Assembly amended Code § 46.2-817 in 1999, effective July 1, 2000, and substituted "and” for "or" preceding the words “wanton disregard.” See 1999 Va. Acts, ch. 720.