UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Athey, Friedman and Raphael
Argued at Richmond, Virginia


WILLIE JACKSON FARLEY, III

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0234-23-2                      JUDGE FRANK K. FRIEDMAN
                                                          MAY 14, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF MECKLENBURG COUNTY
S. Anderson Nelson, Judge

Brett P. Blobaum, Senior Appellate Attorney (Virginia Indigent
Defense Commission, on briefs), for appellant.

Aaron J. Campbell, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


A jury found the appellant, Willie Jackson Farley, III, guilty of rape, sodomy, attempted

aggravated murder, aggravated malicious wounding,[1] aggravated sexual battery, burglary,

robbery, and arson.  Farley contends that the evidence is insufficient to sustain his convictions

for aggravated malicious wounding, arson, burglary, and robbery.  He also argues that the jury

instructions for sodomy and attempted aggravated murder misstated the elements of the offenses

and another instruction erroneously allowed the jury to consider his character.  Farley did not

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] The conviction order and final sentencing order erroneously indicate that the appellant
was convicted of aggravated malicious wounding under Code § 18.2-51.1(A).  Code § 18.2-51.1
pertains to malicious bodily injury to law enforcement officers and similar personnel.  The
correct statute is § 18.2-51.2(A).  We remand the case to the trial court to correct the clerical
error under Code § 8.01-428 ("Clerical mistakes in all judgments or other parts of the record and
errors therein arising from oversight or from an inadvertent omission may be corrected by the
court at any time on its own initiative or upon the motion of any party and after such notice, as
the court may order.").

object to the instructions at trial, and he asks the Court to apply the ends of justice exception to Rule 5A:18. For the following reasons, we affirm the convictions.

BACKGROUND[2]

At about 8:00 p.m. on August 9, 2019, Farley left a gift bag with birthday presents for his daughter, who was turning seven years old the next day, at the end of D.W.'s driveway in Mecklenburg County. D.W. was his former mother-in-law and had custody of his two daughters. He did not have an amicable relationship with D.W. and did not have permission to enter her house. D.W. saw Farley leave the gift bag but did not retrieve it because she was in her pajamas, it was getting dark, and she did not trust him.

Farley went to a bar where he became intoxicated after drinking several beers and liquor shots. Between 1:00 and 2:00 a.m. on August 10, 2019, he returned to D.W.'s residence; angry that the gift bag was still in the driveway, he entered the house through a bathroom window. D.W. heard Farley in her bedroom "rustling" some of her papers. Next she heard him approach her bed and "the sound of metal," which she thought could be a pistol or a belt buckle. She pretended to be asleep when Farley touched the back of her pajamas several times.[3] Eventually, she asked him what he wanted. He immediately jumped on top of her, ripped off her pajamas, and inserted his penis into her vagina. He also punched her in the face, fondled her breasts, and forced her to perform fellatio on him. Next he flipped her onto her stomach and began beating the back of her head. He stopped hitting her when she "went limp," pretending she had passed

---

[2] The facts are recited "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).

[3] Defense counsel attempted to impeach D.W. during cross-examination by asserting she had told Deputy Thompson that Farley had "rubbed" her back. D.W. did not recall specifically what she had said, but she stated that "it was not a massage." Thompson's body camera video indicates that D.W. said Farley "lightly touched" her back.

out.  Then he started a fire in a box of papers on a bench at the end of the bed.  D.W. could see flames and smell smoke.  The room filled with smoke, setting off the smoke alarm in the kitchen.

When Farley left the room to dismantle the alarm, D.W. locked the bedroom door.  When he returned to the bedroom and banged on the closed door, she decided to escape by jumping out the bedroom window, a drop of "over six feet" to the ground.  D.W. suffered a significant injury to her knee in landing below.  She lay on the ground until she heard Farley get in his truck and drive away.  She then entered her house and removed the burning box.  She discovered that her cell phone, which had been on her bedside table, was missing.  She used an old phone to call 911.

Mecklenburg County Sheriff's Deputy Levi Thompson responded to the 911 call at 2:47 a.m.  He saw that D.W.'s face and nose were swollen and her hair was "bloody" and "matted."  The inside of the house was smoky.  D.W. told him that Farley had started a fire in a box in her bedroom.  Thompson saw "scorching" in the bedroom where the burning box had been against a bench at the end of the bed and "[t]here was scarring on the bench from where the flames had been on it charring it."

When the officers left D.W.'s property at 5:19 a.m. on August 10, 2019, there were no signs of fire.  At about 6:00 a.m., another deputy in the area saw smoke at D.W.'s house.  The ensuing fire destroyed the house.

D.W. was taken by ambulance to a local hospital and then transferred to VCU, where she spent four days in ICU.  Her facial injuries were consistent with blunt force trauma, and two staples were needed to close the wound on the back of her head.  Her vagina showed "extensive" trauma.  She also suffered from smoke inhalation.  When the offenses occurred in August 2019, D.W. was 69 years old, in "comparatively good health for her age," and worked as a nurse.  At the time of the trial in October 2022, she was no longer employed, walked with a cane, needed

- 3 -

knee replacement surgery, had "knots and spasms" in her neck and ringing in her ears, and had trouble sleeping.  These injuries could be traced back to Farley's attack upon her.

Investigator B.J. Mull arrested Farley in Wilson, North Carolina on August 11, 2019.  After being advised and waiving his *Miranda*[4] rights, he admitted entering D.W.'s house unlawfully and hitting her twice, claiming she startled him when he touched her back.  He did not remember raping her; nor did he say they had consensual sex.  When Mull told him that his hat had been found by D.W.'s bed, Farley said, "I'm going to jail; I'm going to get life in prison."  He said the fire could have started when he dropped a cigarette in the box of papers by the bed.  When Mull suggested that Farley had returned to the house and set another fire, he replied, "that sounds like some shit I'd do," but he denied burning down the house.  He admitted taking D.W.'s phone and throwing it from his truck as he drove away.  He also said that he used to hide in the bushes near D.W.'s house and watch her through the scope of his rifle but did not shoot her because his daughters were there.  Throughout the interview he became angry whenever D.W.'s name was mentioned, calling her a "fucking bitch" and saying he hated her "with a passion" and wished he had hired someone to kill her years ago.  The audiotape of the interview was played at trial.

Farley testified at trial that he went back to D.W.'s house to check on the gift bag because he was afraid she would not give it to his daughter.  Angry that the bag was still in the driveway, he took it to the house, but then returned it to the driveway before entering the house through the bathroom window.  According to the appellant, he went to D.W.'s bedroom to find his daughters because they were not in their bedrooms.  He said he was feeling in the bed for his daughters when D.W. grabbed his arm and he hit her twice.  He claimed that D.W. grabbed his penis and began to suck it and also inserted his penis into her vagina, saying "give me some of that big

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

cock."[5]  He said he did not intend to start a fire and ran out of the house after he jerked the

smoke alarm off the kitchen wall.

The jury found Farley guilty, and the trial court sentenced him to life plus 200 years in

prison, with 155 years suspended.

ANALYSIS

The appellant raises seven assignments of error—three contest jury instructions

pertaining to sodomy, attempted aggravated murder, and character, and four challenge the

sufficiency of the evidence to sustain his convictions for aggravated malicious wounding, arson,

burglary, and robbery.

I.  Jury Instructions

Farley contends that the trial court erroneously instructed the jury regarding the elements

of sodomy (Instruction 18) and attempted aggravated murder (Instruction 28).  He also asserts

that the trial court erred in giving an instruction regarding his character (Instruction 7).  He did

not object at trial to these instructions, but he argues on appeal that the ends of justice exception

to Rule 5A:18 applies.

Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis

for reversal unless an objection was stated with reasonable certainty at the time of the ruling,

except for good cause shown or to enable this Court to attain the ends of justice."  The exception

"is 'narrow and is to be used sparingly.'"  *Brittle v. Commonwealth*, 54 Va. App. 505, 512

(2009) (quoting *Pearce v. Commonwealth*, 53 Va. App. 113, 123 (2008)).  It is appropriately

applied "when the judgment of the trial court was error and application of the exception is

_____

[5] D.W. acknowledged on cross-examination that she told the investigating officers she had "talked dirty" to Farley, but she explained she had read that a fearful victim excites a rapist and she was "trying to survive" by seeming to "go along with it" so he would leave.  She emphasized throughout her testimony that she did not willingly consent to any sexual acts.

necessary to avoid a grave injustice or the denial of essential rights." *Rowe v. Commonwealth*, 277 Va. 495, 503 (2009) (quoting *Charles v. Commonwealth*, 270 Va. 14, 17 (2005)). The exception does not apply if the error was harmless. *See Phoung v. Commonwealth*, 15 Va. App. 457, 466 (1992).

We hold that the trial court erred in giving the sodomy and character instructions, but the error was harmless. We assume without deciding that the court erred in giving the attempted aggravated murder instruction and hold that the error was harmless. *See Commonwealth v. Kilpatrick*, 301 Va. 214, 216 (2022) (explaining that the Court "looks for 'the best and narrowest grounds available' for its decision, including harmless error" (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017))).

## A. Standard of Review

"As a general rule, the matter of granting and refusing jury instructions rests 'in the sound discretion of the trial court.'" *Pena Pinedo v. Commonwealth*, 300 Va. 116, 121 (2021) (quoting *Cooper v. Commonwealth*, 277 Va. 377, 381 (2009)). This Court's "sole responsibility in reviewing [jury instructions] is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." *Id.* (alteration in original) (quoting *Cooper*, 277 Va. at 381). "[W]hether a jury instruction accurately states the relevant law is a question of law that we review de novo." *Watson v. Commonwealth*, 298 Va. 197, 207 (2019) (quoting *Payne v. Commonwealth*, 292 Va. 855, 869 (2016)). "It is well settled that instructions given without objection become the law of the case and thereby bind the parties in the trial court and this Court on review." *Bryant v. Commonwealth*, 295 Va. 302, 307 (2018) (quoting *Online Res. Corp. v. Lawlor*, 285 Va. 40, 60-61 (2013)); *accord Miles v. Commonwealth*, 78 Va. App. 73, 84 n.5 (2023). *See Bazemore v. Commonwealth*, 42 Va. App. 203, 219 (2004) (en banc) (stating that the Court need not "always apply the ends of justice exception in cases involving faulty jury

instructions to which no objection was noted below—even where such faulty instructions improperly stated the elements of an offense," and declining to apply the exception). Further, when a trial court erroneously instructs the jury, the error is harmless if the record clearly establishes the defendant's guilt. *Conley v. Commonwealth*, 74 Va. App. 658, 683-84 (2022).

When the propriety of a jury instruction is challenged, the non-constitutional standard for harmless error applies. *See Graves v. Commonwealth*, 65 Va. App. 702, 711 (2016); *Turman v. Commonwealth*, 276 Va. 558, 565 (2008); *Velasquez v. Commonwealth*, 276 Va. 326, 331 n.5 (2008). A non-constitutional error is harmless when "it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." Code § 8.01-678. The error is harmless "if the reviewing court can be sure that the error did not influence the [fact finder] and only had a slight effect." *Lawrence v. Commonwealth*, 279 Va. 490, 497 (2010). "To reach this conclusion, the evidence of guilt must be so overwhelming that it renders the error insignificant by comparison such that the error could not have affected the verdict." *Kilpatrick*, 301 Va. at 217.

### B. Sodomy Instruction

A sodomy conviction under Code § 18.2-67.1 requires proof of cunnilingus, fellatio, anilingus, or anal intercourse. *See* Model Jury Instrs.—Crim. No. 48.420 (stating that sodomy requires proof that "the [penis; mouth; tongue] of the defendant penetrated into the [mouth; anus; female sex organ] of" the victim).

Here, the jury was instructed that to establish sodomy the Commonwealth had to "prove beyond a reasonable doubt" the appellant's penis "penetrated into the mouth, anus or *sexual organ* of D.W. . . . against her will" and "by force, threat or intimidation." (Emphasis added). The appellant argues that the ends of justice exception to Rule 5A:18 applies because the jury was misinformed on the elements of the offense. He asserts that the jury could have believed his

- 7 -

testimony that the fellatio was consensual, and thus not a crime, but found he committed sodomy because the penetration of his penis into D.W.'s "sexual organ" was nonconsensual.

Even though the instruction improperly stated the elements of the offense, we hold that no reversible error occurred. "It can hardly be a 'grave injustice' . . . for a trial court to give an agreed upon jury instruction." *Alford v. Commonwealth*, 56 Va. App. 706, 709 (2010) (quoting *Brittle*, 54 Va. App. at 513); *accord Hamilton v. Commonwealth*, 69 Va. App. 176. 192-94 (2018). But a "grave injustice" occurs if a jury instruction omits an element of the crime and the Commonwealth failed to prove the omitted element. *Jimenez v. Commonwealth*, 241 Va. 244, 251 (1991) (holding that the defendant was convicted of "a non-offense" because a jury instruction omitted a required element of the offense, and thus stated no offense at all, and no evidence was presented regarding the missing element).

In *Campbell v. Commonwealth*, 14 Va. App. 988 (1992) (en banc), *aff'd on other grounds*, 246 Va. 174 (1993), this Court, in a 4-1-4 decision, relied on the holding in *Jimenez* to invoke the ends of justice exception to Rule 5A:18 because the error in a jury instruction allowed the defendant to be convicted "for otherwise innocent behavior." *Id.* at 995-96. The defendant in *Campbell*, a district court judge, was charged with forging a public record; the dispositive issue in the case was whether he had been joking when he asked his clerk to change the name of an acquaintance on a traffic ticket. *Id.* at 1004-06 (Moon, J., dissenting). He argued on appeal that an error in the wording of a jury instruction allowed the jury to convict him without finding that he had acted with the requisite intent to defraud. *Id.* at 990. Even though he had objected to the instruction on a different basis at trial, the majority panel considered the issue under the ends of justice exception and held that the error in the jury instruction "was patently harmful." *Id.* at 991, 996.

The concurring judge in *Campbell* wrote separately "to explain why . . . the contemporaneous objection rule d[id] not bar a reversal" in the case. *Id.* at 995 (Barrow, J., concurring). After noting that the ends of justice exception required the error to be "clear, substantial and material," he stated that an error in a jury instruction was "clear" when it was apparent the language conflicted with existing law *and* the defendant had not "acquiesced . . . expressly or impliedly" in the instruction. *Id.* at 997. The judge found that Campbell had not acquiesced to the erroneous instruction because he had objected to it at trial, even though on different grounds. *Id.* at 998. Thus, the error was "clear." *Id.* The judge concluded the error also was "substantial" and "material" and joined the majority's opinion to reverse and remand the conviction. *Id.*

A logical reading of the concurrence suggests that if Campbell had made no objection to the instruction on any grounds, the ends of justice exception would not have applied. *See generally Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . .'" (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976))). Thus, *Campbell* may be distinguished from Farley's case because Farley expressly acquiesced to the sodomy instruction when he made no objection to it at trial.

*Campbell* is further distinguished because the only issue in the case was whether the defendant had the intent to defraud, which he "adamantly contested," and the erroneous jury instruction eliminated intent to defraud as an element of the offense. *Bazemore*, 42 Va. App. at 221. In *Bazemore*, the defendant was charged with feloniously eluding police and second-degree murder. *Id.* at 207. He asserted on appeal that a jury instruction erroneously described the necessary element of driving willfully and wantonly in the disjunctive instead of the conjunctive.

- 9 -

*Id.* at 215. He did not object to the instruction at trial and asked this Court to apply the ends of justice exception to Rule 5A:18. *Id.* at 217. Holding that the error in the jury instruction was not a miscarriage of justice, this Court distinguished *Campbell* because Bazemore claimed at trial only that he was not driving the vehicle involved in the fatal collision and "never contested the fact that the minivan was driven in a willful and wanton manner." *Id.* at 223-24.

Farley did not deny that fellatio had occurred; he asserted only that D.W. had initiated the oral sex. Unlike in *Campbell*, the instruction in Farley's case did not omit an essential element of the offense, and evidence pertaining to the elements required to prove sodomy was presented.

The holding in *Conley* is instructive. The defendant in *Conley* was charged with committing sodomy by anal intercourse, but the jury was instructed that the Commonwealth had to prove "'the penis of the defendant penetrated into the *female sex organ* of [J.M.],' instead of the *anus*." 74 Va. App. at 683. Conley, like Farley, did not timely object to the incorrect instruction and asked this Court to consider his argument under the ends of justice exception to Rule 5A:18. This Court declined to apply the exception, holding that the error was harmless because the evidence, which "included video footage of the defendant inserting his penis into J.M.'s anus while she was sleeping," conclusively established Conley's guilt. *Id.* at 684.

Similarly, in this case the error was harmless because there was overwhelming evidence that Farley's penis penetrated D.W.'s mouth without her consent. D.W. testified that after the appellant raped her, he held his right hand on her throat, grabbed her head with his left arm and thrust her head "back and forth in oral fellatio." She testified that she had not been a willing participant in any sexual act. The forensic nurse who examined D.W. testified that she had "significant injury" to her mouth, including "large hematomas" on her lips and "multiple areas of petechiae and hematomas to the back of her throat." Given the overwhelming evidence of

Farley's guilt, the error in the instruction was "insignificant by comparison" and "could not have affected the verdict."[6] *Kilpatrick*, 301 Va. at 217.

### C. Attempted Aggravated Murder Instruction

A conviction for an attempted crime requires proof of two elements: "the intent to commit the crime and the doing of some direct [or overt] act toward its consummation." *Jones v. Commonwealth*, 70 Va. App. 307, 314 (2019) (en banc) (alteration in original) (quoting *Rogers v. Commonwealth*, 55 Va. App. 20, 24-25 (2009)). Here, the jury was instructed the Commonwealth had to prove the following:

> (1) That the defendant attempted to kill D.W.; and
>
> (2) That the attempted killing was willful, deliberate and premeditated; and
>
> (3) That the attempted killing was in the commission or attempted commission of [r]obbery, and/or was of a person in the commission, or subsequent to, [r]ape or [f]orcible [s]odomy.

Farley argues that error occurred because the jury was not expressly instructed that an attempted crime requires proof that the defendant did a direct act toward committing the intended crime.[7]

Deciding the issue on "the best and narrowest grounds available," *White*, 293 Va. at 419, we assume without deciding that the trial court erred in giving the instruction.[8] But we hold that

---

[6] We note that Farley did not challenge the sufficiency of the evidence to support the sodomy conviction as a separate assignment of error.

[7] The jury was instructed that "[t]he intent required to be proved in an attempted crime is the specific intent in the person's mind to commit the particular crime for which the attempt is charged . . . [and that] the conduct of the person involved and all the circumstances revealed by the evidence" may be considered. The jury also was instructed that "[t]he direct act required to be proved in an attempted crime is an act which shows a present intention to commit the crime. The act need not be the last act prior to the actual commission of the crime, but it must be more than mere preparation."

[8] Thus, we do not address the Commonwealth's argument that because the jury was instructed on both the requisite intent and direct act, the alleged error in the attempted murder instruction was cured by reading the three instructions together. *See Walshaw v. Commonwealth*,

the error was harmless because the evidence proved that Farley attempted to kill D.W. by severely beating her in the head and starting a fire in her bedroom after he raped her. His conduct was a direct act in furtherance of the crime of aggravated murder. *See Jones*, 70 Va. App. at 329 (stating that the direct but ineffectual act intended to accomplish the crime can be "slight"). Because the record contains "overwhelming" evidence of guilt, the error in the jury instruction is "insignificant by comparison" and "could not have affected the verdict." *Kilpatrick*, 301 Va. at 217.

### D. Character Evidence Instruction

The jury was instructed that it "may consider the character of the defendant when proven by the evidence, whether good or bad, along with the other facts and circumstances in the case in determining his guilt or innocence." The appellant argues the instruction did not apply to his case and the error is not harmless.

The instruction was a correct statement of the law, but it was erroneously given because it applies only when "the *defendant* has offered character evidence." *See* Comment, Model Jury Instrs.—Crim. No. 2.200 (emphasis added); *Robinson v. Commonwealth*, 118 Va. 785, 790 (1916) ("The weight of authority is to the effect that character is not in issue unless put there by the defendant."). Although the appellant put his credibility in issue by testifying, he did not offer evidence of his good character. *See Smith v. Commonwealth*, 212 Va. 675, 676 (1972) (holding that the defendant had not put his character in issue by testifying and thus the Commonwealth erred by presenting rebuttal evidence of his bad reputation as a law-abiding citizen).

---

44 Va. App. 103, 119 (2004) ("[W]hen a trial court grants numerous instructions, the jury must 'consider the instructions as a whole and in the light of the evidence applicable to the issues presented.'" (quoting *Rollston v. Commonwealth*, 11 Va. App. 535, 541, (1991))).

Here, Farley testified that he had been drinking before he entered D.W.'s house at 2:00 a.m. through a bathroom window, knowing he had no permission to be there. He stated his intense dislike for D.W. numerous times throughout the interview with Investigator Mull. The jury could consider that evidence whether or not the character evidence instruction was given. *Cf. Gravely v. Commonwealth*, 13 Va. App. 560, 564 (1992) (holding that the Commonwealth's improper cross-examination of the defendant's witnesses was not harmless error because the jury would not have heard the challenged evidence but for the cross-examination).

Additionally, the evidence of Farley's guilt was overwhelming, making the error "insignificant by comparison." *Kilpatrick*, 301 Va. at 217. D.W. described how he raped, sodomized, and beat her. Photos taken of her after the attack showed the extent of her injuries, which were serious and permanent. He was not eliminated as a contributor of the sperm found in her vagina. It is plain from the record that the error in giving this instruction could not have affected the verdicts. *See id.* at 217-18. Thus, the error was harmless.

## II. Sufficiency of the Evidence

### A. Standard of Review

"In reviewing a challenge to the sufficiency of the evidence, we affirm the trial court's judgment 'unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.'" *Pulley v. Commonwealth*, 74 Va. App. 104, 123 (2021) (quoting *Poole v. Commonwealth*, 73 Va. App. 357, 363 (2021)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

### B. Aggravated Malicious Wounding

A conviction for aggravated malicious wounding requires that the victim is "severely injured and is caused to suffer permanent and significant physical impairment." Code § 18.2-51.2(A). A "physical impairment" is "any physical condition, anatomic loss, or cosmetic disfigurement." *Lamm v. Commonwealth*, 55 Va. App. 637, 644 (2010) (quoting *Newton v. Commonwealth*, 21 Va. App. 86, 90 (1995)). "To prove an injury is permanent, the Commonwealth need not present definitive testimony that a victim's injuries will never improve, but instead can leave it to the common sense of the [fact finder] to determine if the injuries are permanent." *Id.* at 644-45.

The appellant argues that the evidence did not prove that D.W. suffered any permanent and significant injury or that his conduct was the proximate cause of the injury to D.W.'s knee. The evidence belies his claim. D.W. was in good health and working as a nurse before Farley attacked her in August 2019. As shown by the photographs of her injuries, which were taken at the time of the offense, D.W. was severely beaten about the face and head. At the time of trial in October 2022, she continued to have spasms in her neck and ringing in her ears. She was no longer employed. She used a cane to walk and needed knee replacement surgery. The injuries inflicted by Farley were a "permanent and significant physical impairment." *See Hawkins v. Commonwealth*, 64 Va. App. 650, 656 (2015) (affirming conviction for aggravated malicious wounding where abdominal surgery for a bullet wound inflicted by the defendant resulted in the

victim having a large, permanent scar); *Lamm*, 55 Va. App. at 640-41 (affirming conviction for aggravated malicious wounding where the victim suffered broken bones around her eyes and nose, requiring metal plates to be inserted in her forehead).

Further, Farley proximately caused D.W.'s knee injury because she hurt her knee when she jumped out of her bedroom window to escape from him. A proximate cause is "an act or omission that, in natural and continuous sequence unbroken by a superseding cause, produces a particular event and without which that event would not have occurred." *Levenson v. Commonwealth*, 68 Va. App. 255, 259 (2017) (quoting *Brown v. Commonwealth*, 278 Va. 523, 529 (2009)). "[A]n intervening cause is not a superseding cause if it was put into operation by the defendant's wrongful act or omission." *Id.* (quoting *Dorman v. State Indus., Inc.*, 292 Va. 111, 123 (2016)). "[M]edical treatment received by a victim is part of the causal chain put into operation by the defendant's wrongful act or omission." *Id.* at 260. *See Hawkins*, 64 Va. App. at 656 (holding that abdominal surgery for the victim's bullet wound, resulting in a permanent scar, "did not relieve appellant from liability or break the chain of the causal connection between the shooting and the scar because the surgery was a reasonably foreseeable consequence of the shooting"); *Levenson*, 68 Va. App. at 261-62 (affirming conviction for aggravated involuntary manslaughter where the victim died from medical treatment received as a result of a car crash and rejecting the defendant's theory that the treatment was a superseding act); *see also Brown*, 278 Va. at 530 (affirming conviction for involuntary manslaughter where the victim died when his vehicle was struck by a police officer's vehicle during a high-speed pursuit of the defendant); *Commonwealth v. Jenkins*, 255 Va. 516, 521 (1998) (affirming a murder conviction where the victim died from aspiration of his vomit four days after he was shot). Accordingly, the evidence was sufficient to sustain the conviction for aggravated malicious wounding.

## C. Arson

A prosecution for arson requires proof that "the fire was of incendiary, rather than of accidental origin" and the accused was the criminal agent in setting the fire. *Riner v. Commonwealth*, 268 Va. 296, 328 (2004) (quoting *Cook v. Commonwealth*, 226 Va. 427, 431 (1983)). A fire is presumed to have been caused accidentally, but the presumption is rebuttable. *See id.* The origin of a fire "is a question of fact" and "may, and often must, turn upon the weight of circumstantial evidence." *Id.* (quoting *Knight v. Commonwealth*, 225 Va. 85, 89 (1983)). Additionally, "[t]he amount of 'burning' necessary to be shown [in cases of arson] is any amount, provided there is a perceptible wasting of the fiber of the building or object which is a subject of arson, or some part of that building or object, by fire." *Hancock v. Commonwealth*, 12 Va. App. 774, 779 (1991) (quoting 2A Michie's Jurisprudence, *Arson* § 1 (1981)).

Farley acknowledged at trial that he unintentionally could have started the fire in the box of papers in D.W.'s bedroom when he dropped a cigarette into the box, but he contends he is not guilty of arson because the bedroom fire did not cause structural damage to the house.[9]

We hold that the evidence is sufficient to prove the appellant intentionally started the fire in the bedroom when he ignited papers that were in a box on a bench by D.W.'s bed. The jury was entitled to reject his testimony that he may have accidentally dropped a cigarette into the box of papers. *See Raspberry v. Commonwealth*, 71 Va. App. 19, 29 (2019) ("[D]etermining the credibility of the witnesses and the weight afforded the[ir] testimony . . . are matters left to the

---

[9] Farley further argues there is no evidence the second fire, which began after the law enforcement officers left the property and destroyed D.W.'s house, was purposely set or that he started it. We agree that the arson conviction cannot be sustained based on the second fire because proof of its incendiary origin is speculative. *Cf. Riner*, 268 Va. at 329-30 (affirming the defendant's arson conviction, even though there was conflicting evidence about the fire's origin, because the "fact-finder . . . accepted the testimony of a qualified expert witness, which negate[d] every reasonable possibility that a fire was of accidental origin" (quoting *Cook*, 226 Va. at 432)).

trier of fact, who has the ability to hear and see them as they testify." (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015))); *Rams v. Commonwealth*, 70 Va. App. 12, 38 (2019) (stating that the fact finder "is free to believe or disbelieve, in whole or in part, the testimony of any witness"). The jury then could conclude Farley's self-serving testimony was an attempt to conceal his guilt. *See Washington v. Commonwealth*, 75 Va. App. 606, 616 (2022); *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011).

The evidence also shows that the damage from the bedroom fire was a sufficient "burning" to establish arson. Deputy Thompson, who arrived at D.W.'s house at 2:47 a.m. on August 10, 2019, observed that the house was filled with smoke and there were signs of "scorching" in the bedroom where Farley had started the fire. Thompson noted that "the fire . . . had been up against that bench burning. There was scarring on the bench from where the flames had been on it charring it." The jury saw a photo of the burned bench. The jury also saw photos of bedding and the bedroom floor that appeared to be dusted with ashes.

In *Hancock*, the defendant and another man started a fire outside a building with people inside. 12 Va. App. at 777-78. Unable to leave by the door when the room filled with smoke, the people inside "managed to put out the fire by smothering it with plywood and escaped by kicking through the back wall." *Id.* at 778. Inspection after the fire showed that "the center pole of the structure had been charred by the fire." *Id.* Hancock admitted he had set the fire deliberately, but he argued on appeal that "the Commonwealth failed to prove that the fire damaged the building or, whatever damage may have occurred was insufficient to establish 'burning' within the meaning of [the applicable arson statute]." *Id.* This Court disagreed, "following the precedent set by a majority of other states which hold that only a slight burning is necessary." *Id.* at 779. Here, in best light to the Commonwealth, the evidence established a "slight burning" in D.W.'s bedroom which was sufficient to sustain the arson conviction.

- 17 -

D.  Burglary

As pertinent to this case, the appellant's conviction for burglary required proof that he entered D.W.'s house in the nighttime without breaking "with intent to commit murder, rape, robbery or arson."  Code § 18.2-90.

The appellant contends the evidence did not prove he entered D.W.'s home with the requisite intent.  Although the Commonwealth argues that he has waived this claim because he did not make the same argument to the trial court, we assume without deciding that he has preserved it.  Further, we hold that the evidence was sufficient to prove that Farley committed burglary.

"[W]hen an unlawful entry is made into a dwelling of another . . . the specific intent with which such entry was made may be inferred from the surrounding facts and circumstances."  *Vincent v. Commonwealth*, 276 Va. 648, 653 (2008) (quoting *Ridley v. Commonwealth*, 219 Va. 834, 836 (1979)).  A person may act with multiple intents.  *See Holley v. Commonwealth*, 44 Va. App. 228, 237-38 (2004) (holding that the defendant's act of accelerating towards a police officer established sufficient evidence to support the inference that he sought to escape apprehension *and* intended to injure the police officer while doing so).  "Evidence of a person's intent can be proven by the person's conduct and statements '*after* the events that constitute the charged crime.'"  *Choon Poong Lee v. Commonwealth*, 68 Va. App. 313, 319 (2017) (quoting *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011)).  "Intent is a factual determination, and a [fact finder]'s decision on the question of intent is accorded great deference on appeal and will not be reversed unless clearly erroneous."  *Towler v. Commonwealth*, 59 Va. App. 284, 297 (2011).

Farley knew he was not allowed in D.W.'s house.  He asserts that he entered the house only to give his daughter her birthday present.  Yet, he left the gift bag at the end of the driveway

where he had placed it several hours earlier. The jury was entitled to reject his claim that he entered the house at 2:00 a.m. only to tell his sleeping, seven-year-old daughter where her birthday present was. The jury also could discredit his claim that he went to D.W.'s bedroom to look for his daughters. His hatred of D.W. and his anger toward her was readily apparent throughout his interview with Investigator Mull. Upon entering the bedroom, he raped D.W. and continued to beat her until she feigned unconsciousness. Then he started the fire in the bedroom and took her phone before leaving the house. The reasonable inference from the evidence is that Farley entered D.W.'s house with the intent to commit murder, rape, robbery, or arson. Thus, the evidence sufficiently proved the burglary conviction.

### E. Robbery

Robbery "is defined as 'the taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation.'" *Ali v. Commonwealth*, 280 Va. 665, 668 (2010) (quoting *Durham v. Commonwealth*, 214 Va. 166, 168 (1973)). "An intent to commit robbery does not have to exist for any particular length of time. It may occur momentarily. Whether such an intent did exist is to be determined from the particular facts and circumstances of the acts committed." *Durham*, 214 Va. at 169. However, "proof of an intent to steal which arises merely as an afterthought to the application of force, rather than prior to or concurrently with it, is insufficient to prove robbery." *Dean v. Commonwealth*, 61 Va. App. 209, 218 (2012).

Farley argues that the evidence did not establish "when the phone was taken or when the intent to steal arose" and thus was insufficient to prove he took D.W.'s phone by violence or intimidation. The Commonwealth contends that the appellant has waived his argument regarding the intent to steal because his assignment of error addresses only the "violence or

intimidation" aspect of robbery. We assume without deciding that Farley preserved his argument and hold that the evidence is sufficient to support the robbery conviction.

D.W.'s phone was on a table beside her bed when Farley entered her bedroom and then raped and sodomized her and pummeled her face and chest. D.W. discovered the phone was missing after Farley had left her house. "[W]here the violence against the victim and the trespass to his property combine in a continuing, unbroken sequence of events, the robbery itself continues as well for the same period of time." *Briley v. Commonwealth*, 221 Va. 532, 543 (1980) (affirming a conviction for capital murder where the defendant and others hijacked the victim's car, then drove it to another location 15-20 minutes away where they killed the victim before stripping and abandoning the stolen car). The theft of D.W.'s phone was closely connected to the other offenses Farley committed.

Here, Farley admitted taking the phone, but he claimed that he thought it was his. The jury, however, was entitled to reject his claim; it could reasonably infer from all the evidence that he took the phone to prevent D.W. from calling for help. Also, D.W. told Deputy Thompson that Farley had been sending her "nasty" text messages. By taking D.W.'s phone, Farley was able to conceal the messages he had sent her. The evidence sufficiently proved that Farley committed robbery because the taking was concomitant with the violence and intimidation.

CONCLUSION

The trial court erred in instructing the jury on the elements of sodomy and in giving the character instruction, but the errors were harmless because they were rendered insignificant in comparison to the overwhelming evidence of Farley's guilt and could not have affected the verdicts. Any error in the attempted aggravated murder instruction was, similarly, harmless on this record. Further, the evidence is sufficient to sustain the convictions for aggravated malicious

- 20 -

wounding, arson, burglary, and robbery.  We affirm the appellant's convictions and remand the

case to the trial court to correct the clerical error in the sentencing order.  *See* note 1 *supra*.

*Affirmed and remanded*.