COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Ortiz and Raphael
Argued at Richmond, Virginia


GREGORY D. COOK, JR., S/K/A
  GREGORY DARNELL COOK, JR.

                                      MEMORANDUM OPINION[*] BY
v.       Record No. 0400-22-2            JUDGE STUART A. RAPHAEL
                                            MARCH 7, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
David E. Johnson, Judge

Todd M. Ritter (Hill & Rainey, on brief), for appellant.

Justin B. Hill, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Gregory D. Cook, Jr. appeals his convictions for carrying a concealed weapon and felony

eluding. He argues that the firearm was not concealed because it was plainly visible on the

driver's-side floorboard of his car. And he asserts that he did not elude police because the chase

lasted only 11 seconds. Finding the evidence sufficient to support both convictions, we affirm.

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires that we "discard"

the defendant's evidence when it conflicts with the Commonwealth's evidence, "regard as true

all the credible evidence favorable to the Commonwealth," and read "all fair inferences" in the

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Commonwealth's favor. *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

Around midnight on April 14, 2021, Officer Butts and Officer Fisher, a trainee, were on patrol in their cruiser when they received a message that Lieutenant Aronson had spotted an unregistered car nearby. Butts and Fisher spotted the car exiting a Wawa parking lot, rolling through a stop sign to make a right-hand turn. They followed the vehicle, which then made another right-hand turn without stopping at the red light. Butts activated the police cruiser's emergency lights. "[A]s soon as" he did so, Cook, the driver of the car, "turned back into the Wawa parking lot." Butts estimated the distance to the parking lot from where he activated his lights to be "100 feet, 200 feet maybe." Cook then accelerated. Fisher activated the cruiser's siren and drove 40 to 50 miles per hour in pursuit. There were pedestrians in the Wawa parking lot and cars parked around the store and at the gas pumps. Cook again exited the parking lot, failed to stop at the same stop sign, and finally came to a stop in the middle of the road. About 11 seconds elapsed from the time the cruiser's lights were illuminated until Cook stopped his car and the officers exited their vehicle.

By that point, five or six officers had arrived. The officers conducted a felony traffic stop, drawing their service weapons and ordering Cook to get out of the car. He did not respond right away. After 30 to 60 seconds, Cook exited the car, obeyed the officers' commands, and was taken into custody. The passenger, M.B., also exited through the driver's-side door. She testified at trial that the passenger door was not working.

The driver's-side door of Cook's car was left open, and when Butts and Fisher approached, they saw a handgun on the driver's-side floorboard. After securing the gun, Fisher read Cook his *Miranda*[1] rights. Cook said that he did not stop right away because he had not

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

- 2 -

seen the officers. He also volunteered that he thought the gun was under his seat. Officer Morris, who assisted with the felony traffic stop, searched the area under the driver's seat and found .22-caliber rounds.

At his bench trial, Cook testified in his defense that he did not see the police cruiser with its lights and sirens on until he was in the Wawa parking lot. Cook insisted that he could not have driven faster than 35 miles per hour because the parking lot had speed bumps and his car was a stick-shift. Still, Cook's counsel acknowledged in closing argument, "We would agree it certainly [was] reckless driving." He added that Cook had to get "the vehicle to come to a stop that is doing 35 to 45 an hour without slamming on the brakes."

M.B. testified that when Cook picked her up earlier that evening, she saw the gun in the passenger seat and "pushed it over, like in the same seat." When Cook was stopped by police, she moved the gun to the driver's-side floorboard because she "didn't want it anywhere near [her] when [they] got pulled over." On cross-examination, M.B. admitted that she had told the officers that Cook had been drinking the night of the incident and that, when he saw the officers following him, Cook exclaimed, "oh shit, it's the cops."

The trial court found Cook guilty of felony eluding (Code § 46.2-817); carrying a concealed weapon, third conviction (Code § 18.2-308); driving on a revoked license (Code § 46.2-301); operating a vehicle without registration (Code § 46.2-613); and failing to stop at a stop sign (Code § 46.2-821). On appeal, Cook challenges only his eluding and concealed-weapon convictions. Cook was sentenced to five years' incarceration on the eluding conviction, with four years and eleven months suspended, and ten years' incarceration for the concealed-weapon conviction, with nine years and three months suspended.[2]

_____

[2] Cook received a total prison sentence of 15 years and 6 months, with 13 years and 20 months suspended.

ANALYSIS

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

> A. *The evidence sufficed to show that Cook possessed a concealed weapon (Assignment of Error 1).*

It is unlawful for a person to "carr[y] about his person, hidden from common observation, . . . any pistol, revolver, or other weapon designed or intended to propel a missile of any kind by action of an explosion of any combustible material." Code § 18.2-308. A third or subsequent violation of the statute is punishable as a Class 5 felony. *Id.* On appeal, Cook argues that the handgun found on the driver's-side floorboard was not "hidden from common observation." He relies on M.B.'s version of events—that the handgun was next to her on the passenger seat and she moved it to the driver's-side floorboard before stepping out of the car.

But taking the evidence in the light most favorable to the Commonwealth, *Hammer*, 74 Va. App. at 231, the trial court could reasonably find that Cook had hidden the gun under his

seat.  Officers Butts and Fisher found the firearm on the driver's-side floorboard, the officers recovered ammunition from under the driver's seat, and on the night of the incident, Cook told the officers that he thought the gun was under his seat.  Those facts support a reasonable inference that Cook kept the gun under the driver's seat and that the gun slid forward when he suddenly braked.  The court was free to accept that version of events and to reject M.B.'s testimony.  *See Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019) ("[T]he finder of fact, 'who determines the credibility of the witnesses and the weight accorded their testimony, may accept or reject the testimony in whole or in part.'" (quoting *Perkins v. Commonwealth*, 31 Va. App. 326, 331 (2000))).

Because the Commonwealth presented sufficient evidence to prove that the firearm was "hidden from common observation" under Code § 18.2-308(A), the judgment of the trial court was not "plainly wrong or without evidence to support it."  *McGowan*, 72 Va. App. at 521 (quoting *Smith*, 296 Va. at 460).

### B.  *The evidence sufficed to prove felony eluding (Assignment of Error 2).*

To obtain a conviction under Code § 46.2-817(B), the Commonwealth had to prove that Cook (1) "received a visible or audible signal from any law-enforcement officer to bring his motor vehicle to a stop" and (2) drove "such motor vehicle in a willful and wanton disregard of such signal so as to" (3) "interfere with or endanger the operation of the law-enforcement vehicle or endanger a person."  On appeal, Cook argues that the Commonwealth failed to present sufficient evidence to prove the second and third elements.

#### 1.  *Willful and wanton disregard of the officers' signal to stop*

Willful conduct is "[v]oluntary and intentional, but not necessarily malicious."  *Willful*, *Black's Law Dictionary* (11th ed. 2019).  A person acts "wantonly" when he "[u]nreasonably or maliciously risk[s] harm while being utterly indifferent to the consequences."  *Wanton*, *Black's*

*Law Dictionary*, *supra*. Proving wantonness "requires a showing of recklessness plus additional culpability." *Bazemore v. Commonwealth*, 42 Va. App. 203, 222 (2004) (en banc). In the context of Code § 46.2-817(B), "the intentional violation of a traffic law, without more, will not support a finding of willful and wanton negligence." *Id.* at 223 (quoting *Alfonso v. Robinson*, 257 Va. 540, 545 (1999)).

The trier of fact could properly find the second element of the offense satisfied here. Cook drove 100 to 200 feet into the Wawa parking lot after the officers activated their emergency lights. Cook accelerated away from the officers in pursuit. Even after the officers activated their siren, Cook drove through the parking lot at speeds of up to 50 miles per hour. The trial court could reasonably conclude from that evidence that Cook intentionally disregarded the officers' visual and audible signals, indifferent to the potential risks.

We disagree with Cook that he could not have formed the requisite intent because the chase lasted only 11 seconds. Cook said, "oh shit, it's the cops." And he accelerated to high speeds while driving through a parking lot with pedestrians. Although Cook testified that he did not realize at first that the lights and sirens were directed at him, "the trial court was at liberty to discount [his] self-serving statements as little more than lying to 'conceal his guilt' and could treat such prevarications as 'affirmative evidence of guilt.'" *Coleman v. Commonwealth*, 52 Va. App. 19, 25 (2008) (first quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 10 (2004); and then quoting *Wright v. West*, 505 U.S. 277, 296 (1992)). We find the evidence sufficient to prove that Cook willfully and wantonly disregarded the visual and audible signals of law enforcement commanding him to stop his vehicle.

### 2. *Endangering at least one person*

The final element of endangerment differentiates felony eluding from misdemeanor eluding. "[C]onduct that raises the specter of endangerment is the evil contemplated and

proscribed by" Code § 46.2-817(B).  *Tucker v. Commonwealth*, 38 Va. App. 343, 347 (2002). "To 'endanger' is to 'expose to danger, harm, or loss.'"  *Coleman*, 52 Va. App. at 24 (quoting *Webster's New World Dictionary* 448 (3d coll. ed. 1988)).  The person endangered "can be the driver himself, the police officer, or anyone else on the road that could be put at risk from the driver's eluding."  *Id.*  The statute does not require an eluding defendant to pose an imminent threat.  Requiring an "imminent" threat "would engraft an [additional] element to the offense, thereby permitting the dangerous operation of motor vehicles until a person is actually imperiled, an absurd result that subverts the salutary purposes of the statute."  *Tucker*, 38 Va. App. at 347. "That the exposure to danger does not result in any actual harm is a welcome fortuity, but not a legal defense."  *Coleman*, 52 Va. App. at 24.

The endangerment element was satisfied here.  Cook sped through the Wawa parking lot at 40 to 50 miles per hour despite the presence of pedestrians and cars parked at the store and the gas pumps.  When Cook turned from the parking lot onto the highway, he failed to stop at the stop sign.  Even Cook's trial attorney acknowledged that "it certainly [was] reckless driving." The question for this Court is "whether '*any* rational trier of fact,'" *Vasquez*, 291 Va. at 248 (quoting *Williams*, 278 Va. at 193), could have found that Cook "endanger[ed] a person," Code § 46.2-817(B).  Because Cook sped through a parking lot with pedestrians and failed to stop at the stop sign when turning onto the highway, the trial court could reasonably conclude that Cook endangered himself, the officers, pedestrians, or other motorists in the vicinity.

CONCLUSION

The trial court had sufficient evidence to conclude beyond a reasonable doubt that Cook concealed the firearm under his seat and that he eluded police after being signaled to stop.

*Affirmed.*