# COURT OF APPEALS OF VIRGINIA

### Record No. 0333-25-1

TYRONE ALLEN MARTIN
v.
COMMONWEALTH OF VIRGINIA

Present: Judges Ortiz, Chaney and Frucci

Opinion Issued May 5, 2026[*]

## FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Jamilah D. LeCruise, Judge

(J. Barry McCracken, Assistant Public Defender, on brief), for appellant.

(Jason S. Miyares,[1] Attorney General; Andrew T. Hull, Assistant Attorney General, on brief), for appellee.

## MEMORANDUM OPINION
## PER CURIAM

Following a bench trial, the Circuit Court of the City of Norfolk convicted Tyrone Allen Martin of providing false information to the Sex Offender and Crimes Against Minors Registry, as a second or subsequent offense in violation of Code § 18.2-472.1. The circuit court sentenced Martin to two years of incarceration and suspended all but six months on certain terms.[2] On appeal, Martin contends that the circuit court erred in denying his motions to strike, based both on an alleged fatal variance between the evidence and the "essential averments" in the indictment and

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

[2] The circuit court later imposed an additional two years of incarceration, suspended for a two-year term of post-release supervision.

on his claim that there was insufficient evidence that he knowingly provided false information to the Registry. For the following reasons, we affirm the circuit court's judgment.[3]

BACKGROUND

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that can be drawn from the evidence. *Cady*, 300 Va. at 329.

On June 11, 1999, Martin was convicted in the Circuit Court of the City of Richmond of unlawful carnal knowledge of a fourteen-year-old girl.[4] He subsequently was convicted in the Circuit Court for the City of Norfolk on four separate occasions for failing to register as a sex offender. In 2019, Martin provided the Registry with what he stated was his home address, in the City of Norfolk. Virginia State Trooper James Brown was assigned to verify Martin's home address on a semi-annual basis.

I. Trooper Brown's Attempts to Verify Martin's Address

On March 22, 2023, Trooper Brown knocked on the door of Martin's listed home address but received no response; he taped his business card to the door. On April 4, 2023, Martin visited the house again. This time, Martin's sister answered the door and she told Trooper Brown

---

[3] Having examined the briefs and record in this case, the panel unanimously agrees that oral argument is unnecessary because "the appeal is wholly without merit." *See* Code § 17.1-403(ii)(a); Rule 5A:27(a).

[4] Portions of this record, including the pertinent criminal history, were sealed. "To the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017); *see Brown v. Va. State Bar ex rel. Sixth Dist. Comm.*, 302 Va. 234, 240 n.2 (2023).

that she had told Martin to call Trooper Brown. Trooper Brown left another card and "explained that failing to reach out to [him] could result in a felony." On April 21, 2023, Martin's sister again answered the door and "advised that he lives there, but that he comes and goes."[5] She also stated that she again told Martin to call Trooper Brown and that she "was surprised" that Martin had failed to do so.

On May 1, 2023, Trooper Brown again received no response when he knocked at the door of the residence. He left another card and wrote on it that "it was the fourth attempt" and instructed Martin to call him. Trooper Brown again received no response to his knocks on May 22 and August 9, 2023, and again left business cards. In all, Trooper Brown went to Martin's listed home address six times in 2023.

In addition, Trooper Brown was unable to reach Martin by telephone at either of two numbers Martin had provided, and Martin provided "no registered employment to check, no email[], [and] no vehicles to help for verification purposes." Further, Martin provided no bills, photographs, or other documentation to prove that he lived at that residence. Trooper Brown "couldn't locate him ever at the house" and had no contact from Martin despite Martin continuing to re-register under the same home address.[6] Trooper Brown had not seen Martin since a November 28, 2022 "planned visit" at the same listed home address. Trooper Brown was unable "to physically verify" Martin's residence as required by Code § 9.1-907, "suspected him of using a false residence," and obtained an arrest warrant. Martin was subsequently arrested on September 28, 2023.

---

[5] Martin's sister died before trial. The parties stipulated to her statement; the Commonwealth stated that the stipulation was "not offered for the truth of the matter[,] but just so the Court [was] aware of the situation." The Commonwealth did not object to Martin's later argument that the statement was evidence that he resided there.

[6] Martin registered and re-registered with this same home address from November 28, 2019, until September 27, 2023—a day before he was arrested.

II.  Procedural History

In 2024, a Norfolk grand jury indicted Martin as follows:

> On or about August 23, 2023, in the City of Norfolk, Tyrone Allen
> Martin, as a person having been convicted of a sexually violent
> offense or murder, as defined in § 9.1-900 et seq., did feloniously
> and knowingly fail to register or reregister or knowingly provide
> false information to the Sex Offender and Crimes Against Minors
> Registry after having been previously convicted for an offense
> under Virginia Code § 18.2-472.1.  Virginia Code § 18.2-472.1(B).

The Commonwealth rested after Trooper Brown's testimony, and Martin moved to strike the evidence.  Martin acknowledged that Code § 18.2-472.1(B) made it a felony to fail to verify his registration information, but he stated that the indictment against him did not allege that he had failed to do so.  Citing *Purvy v. Commonwealth*, 59 Va. App. 260 (2011), Martin argued that the omission narrowed the "factual allegation" and likewise limited the extent to which the Commonwealth could rely on the incorporation of the statutory elements through the indictment's reference to the code section defining the offense.  He asserted that the omission resulted in a fatal variance between the indictment and the evidence.  Martin also argued that the Commonwealth could not rely on the allegation in the indictment that he provided false information "since we have an independent individual, not my client, who also said he lives here."  The circuit court took the motion under advisement.  Deshawn Faulkner, Martin's stepson, then testified that he and Martin both lived at the address Martin gave during 2023 while Trooper Brown was trying to contact Martin there.  Faulkner said that Martin was "still residing there."

Martin renewed his motion to strike and included "an alternate argument" that the statements to Trooper Brown by Martin's sister and stepson, together with his own monthly reports, satisfied the verification required by Code § 18.2-472.1(B) and established that he was living at the provided address.  The circuit court found that Martin was "reregistering, which is

good, but the trooper does need to be able to confirm that." It also found that "if Mr. Martin were living there consistently and regularly, then he would have been able to do that at some point during those six visits." The circuit court convicted Martin of providing false information to the Registry under Code § 18.2-472.1. On January 24, 2025, it sentenced Martin to two years' incarceration, with all but six months suspended on certain terms. On January 27, 2025, it imposed an additional two years' incarceration, suspended for a two-year term of post-release supervision. Martin appeals.

ANALYSIS

"The point of an indictment 'is to give an accused notice of the nature and character of the accusations against him in order that he can adequately prepare to defend against his accuser.'" *Purvy*, 59 Va. App. at 265-66 (quoting *King v. Commonwealth*, 40 Va. App. 193, 198 (2003)). "[A] fatal variance occurs where the indictment charges a wholly different offense than the one proved." *Id.* at 266-67. "A conviction for a crime other than the one charged in the indictment is plainly reversible." *Commonwealth v. Bass*, 292 Va. 19, 28 (2016). "A variance is fatal, however, only when the proof is different from and irrelevant to the crime defined in the indictment and is, therefore, insufficient to prove the commission of the crime charged." *Hawks v. Commonwealth*, 228 Va. 244, 247 (1984).

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023)

(alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).  For this Court on review, "[t]he only 'relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)).

I.  Whether There Was a Fatal Variance

Martin argues that the Commonwealth was barred from proving the indictment by showing "a mere failure to verify his information" because that basis for a conviction "was excluded from the indictment."  He relies principally on our decision in *Purvy*.  Purvy was charged only "with failing to 'register or re-register . . . in violation of []§ 18.2-472.1 of the Code of Virginia (1950) as amended.'"  *Purvy*, 59 Va. App. at 267 (first alteration in original).  "Purvy was convicted, however, on the assertion that he 'knowingly provide[d] materially false information' on his reregistration forms."  *Id.* (alteration in original).  Purvy's indictment did not include any allegation that he provided false information.  *Id.* at 264-65.  We recognized the general principle that "an indictment citing a criminal statute incorporates its contents by reference."  *Id.* at 268.  That principle, however, is not without limits.  *Purvy* held that "when the descriptive text of an indictment *narrows* the factual allegation, it limits the scope of the incorporation."  *Id.*; *see also Fontaine v. Commonwealth*, 25 Va. App. 156, 165 (1997), *overruled on other grounds by Edwards v. Commonwealth*, 41 Va. App. 752, 765 (2003) (en banc).  The omission of any allegation that Purvy "knowingly provide[d] materially false information" meant that "a fatal variance existed between the indictments against Purvy and the proof offered by the prosecution at trial," which supported a conviction for that violation alone.  *Purvy*, 59 Va. App. at 269.

Martin stands in a different posture. His indictment charged three violations of the statute in the disjunctive: that he "did feloniously and knowingly fail to register *or* reregister *or* knowingly provide false information." (Emphases added). Evidence of any one of the alleged violations would be sufficient to convict, without any variance with the indictment. Martin even acknowledges that "the Commonwealth maintained that it was proceeding under a theory that [Martin] had provided false information." But he mistakes the gravamen of that theory, answering only that his failure to respond to Trooper Brown's requests "does not amount to a knowingly false assertion." The Commonwealth did not argue that Martin violated the statute by failing to verify his registration information. It instead argued that the Trooper Brown's own unsuccessful efforts to verify Martin's address were evidence that the address information Martin provided was in fact false and that the contrary testimony he submitted was not credible. Indeed, the circuit court found that "if Mr. Martin were living there consistently and regularly, then [Trooper Brown] would have been able to [confirm] that at some point during those six visits." The trooper's inability to do so thus supported the Commonwealth's argument that Martin was not in fact "living there consistently and regularly," so that the home address information he provided was knowingly false, as indicted. As such, there was no fatal variance between the evidence presented and the averments in the indictment.

II. Sufficiency of the Evidence

Martin contends that an inference that his address information was in fact false was insufficient to support his conviction. He argues that Trooper Brown's testimony that Martin "was not at the residence on the six occasions that he made unscheduled visits," even when coupled with his own repeated failure over six months to contact the trooper, "did not refute the assertion on the re[-]registry forms that the Appellant in fact resided there." The evidence supported conflicting inferences, and the circuit court resolved the conflict against Martin after

carefully weighing the extent of the trooper's efforts. It acknowledged that often "the troopers do not visit enough times, but I think six times is enough to have made that verification." The record supports the inference that the home address that Martin provided the Registry was knowingly false.

The fact finder is "free to believe or disbelieve, in part or in whole, the testimony of any witness." *Bazemore v. Commonwealth*, 42 Va. App. 203, 213 (2004) (en banc). "[T]he credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact finder's determination." *Fletcher v. Commonwealth*, 72 Va. App. 493, 502 (2020) (quoting *Crawley v. Commonwealth*, 29 Va. App. 372, 375 (1999)). The record, viewed in the light most favorable to the Commonwealth, supports the circuit court's judgment.

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*